UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES | ) | |
| Plaintiffs, | ) | No. CR-06-0022-DLJ |
| v. | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| KENNETH BORDEWICK, | ) | **MOTION TO DISMISS** |
| Defendant. | ) | |

On May 11, 2007 the Court heard argument on Defendant's motion to dismiss the Indictment for pre-Indictment delay. In his moving papers, Defendant alleges that a forty-four month time lapse between the conclusion of the government's investigation and Defendant's Indictment violates his Fifth Amendment right to due process because his defense has been prejudiced by this delay. Having read the papers submitted, considered the arguments of counsel, and reviewed the applicable law, the Court DENIES Defendant's motion to dismiss for the reasons stated at the hearing and as follows.

A. <u>Factual Background</u>

Defendant was indicted on January 10, 2006 on nine counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of impeding the due administration of the tax laws in violation of 26 U.S.C. § 7212. Indictment ¶ 12, ¶ 22. The Indictment alleges that Defendant created a fraudulent Certificate of Release of Federal Tax Lien (RNFTL), which resulted in the fraudulent release of a federal tax lien against his mother's condominium. Indictment ¶

1

12. The Indictment also alleges that Defendant created a fraudulent mechanic's lien in the amount of $50,000 against his mother's condominium in favor of his friend Robert Morrison. Indictment ¶ 13.

From January 1992 until March of 1996, Defendant's mother, Frances Norene Bordewick (hereinafter "Frances") owned a beauty salon in Antioch, California. Indictment ¶ 3. According to the IRS she failed to pay taxes associated with the operation of the salon and beginning in March 1993 and continuing through January 1997, the IRS recorded a number of tax liens against a condominium that Frances owned in Contra Costa County. Indictment ¶ 4. Defendant lived in the condominium with Frances until 2000 when he moved to Palm Springs and began living with Robert Morrison. Indictment ¶ 6. On November 16, 2000, an escrow was opened by Orange Coast Title Company (OCTC) with relation to a sale of Frances' condominium. Indictment ¶ 7. Karen Ulrici (Ulrici) served as the escrow officer. Indictment ¶ 7. Ulrici and Frances' realtor dealt with Defendant during the escrow process. Indictment ¶ 7. After requesting a preliminary title report, Ulrici learned of the outstanding IRS liens recorded against the condominium. Indictment ¶ 10. Ulrici requested a demand for payment from the IRS and the IRS submitted a demand in the amount of $87,251.30. On December 18, 2000, Ulrici notified Defendant about the IRS demand and informed him that the demand would have to be satisfied. Indictment ¶ 10. According to the IRS, on January 24, 2001 at 3:33 p.m. a Certificate of Release of Federal Tax Lien, which purported to release the IRS lien against Frances' condominium, was recorded in the Contra Costa County Recorders office. Denier Decl. ¶ 11,

2

Ex. D.  Ten minutes later, at 3:43 p.m., a mechanics lien in favor of Robert Morrison in the amount of $50,000 was recorded in the Recorder's office against Frances' condominium.  Denier Decl. ¶ 11, Ex. E.  On January 24, 2001, at approximately 4:00 p.m., Defendant allegedly went to the Pappas Law Office, the law office who had previously handled his mother's bankruptcy matters, and asked the secretary in the office to fax the RNFTL and a copy of the mechanics lien to Ulrici at the title company.  Denier Decl. ¶ 3. Based on the faxed copy of the RNFTL, the title company believed that the lien had been satisfied and allowed escrow to close without settling the IRS demand.  Indictment ¶ 17. Defendant allegedly instructed Ulrici to mail nine checks totaling approximately $44,000 to Morrison in order to satisfy the mechanics lien.  Indictment ¶ 18.  According to Defendant the IRS began an investigation into these events in March 2001.  The IRS conducted interviews with Frances and Defendant in November 2001, December 2001 and January 2002.  Denier Decl., Ex. A, B, C.  Defendant states that based on its review of discovery material provided by the government it appears that the IRS investigation was completed as early as May 2002.  Def. Motion to Dismiss at 3.  The government does not challenge this assertion in its papers.  David Denier, the AUSA prosecuting the case, was assigned the case in 2003.  Denier Decl. ¶ 2.  Defendant was indicted on January 10, 2006 and the statue of limitations would have expired on January 30, 2006. Denier Decl. ¶ 7.  Defendant now moves to dismiss the indictment because he alleges that he has been prejudiced through the loss of witnesses and other exculpatory material because of the government's delay in seeking an Indictment.

3

### B. Legal Standards

The primary protection against prejudice resulting from delay between commission of a crime and Indictment is generally the statute of limitations, however, in some circumstances the due process clause may require dismissal of an Indictment brought within the limitations period. See United States v. Marion, 404 U.S. 307, 322 (1971). In order to demonstrate that a pre-indictment delay has violated a defendant's Due Process rights, the defendant must demonstrate: (1) he or she suffered actual, non-speculative prejudice from the delay; and (2) the delay, when balanced against the prosecution's reasons for it must offend those "fundamental conceptions of justice which lie at the base of our civil and political institutions." United States v. Sherlock, 962 F.2d 1349, 1353-54 (9th Cir. 1992).

A defendant bears a "heavy burden" in establishing that he suffered actual, non-speculative prejudice.[1] See Id. Not only must the defendant demonstrate that critical testimony or evidence was lost but he or she must also provide some evidence as to what the unavailable witness would testify or evidence would show. See United States v. Mays, 759 F.2d 670, 677 (9th Cir. 1977). Simply asserting that a witness might have been useful or speculating as to the content of their testimony is insufficient. See Id. The Ninth Circuit has acknowledged that establishing actual prejudice

---

[1] Only a handful of Courts have found cases where a defendant could prove actual prejudice. "The task of establishing the requisite prejudice for a possible due process violation is so heavy that we have found only two cases since 1975 in which any circuit has upheld a due process claim." U.S. v. Huntley, 976 F.2d 1287, 1290 (9th Cir. 1992).

4

is not an easy task because until a defendant is indicted or arrested he often has no reason to preserve a witnesses' testimony, but, nonetheless is still required to make some showing as to what their testimony would have been or specifically how the witness could have exonerated him.  The Ninth Circuit has noted that a lack of evidence corroborating the content of an unavailable witness' testimony will especially be weighed against a defendant in cases where a defendant had notice of the possibility of an Indictment and failed to secure evidence that would demonstrate what the unavailable witness would testify to at trial.  See Id. at 679 fn. 17.

If a defendant is able to sustain his burden and demonstrate that he has suffered actual, non-speculative prejudice, the court must assess the length of the delay and reason for it.  See United States v. Moran, 759 F.2d 777, 782 (9th Cir. 1985).  In assessing the reason for the delay, courts have recognized that prosecutors must be granted some degree of leeway in their decision as to the timing of arrests and indictments.  See United States v. Lovasco, 431 U.S. 783, 790-91 (1977).  Consequently, there are a number of permissible investigatory and prosecutorial reasons for delay, which will never offend a defendant's due process rights even if the defendant is substantially prejudiced.  These reasons include cases where the prosecutor does not believe that he has probable cause to file charges, or is not satisfied that he can prove his case beyond a reasonable doubt.  See Id. at 791.  Additionally, Courts have recognized the danger of adopting bright line rules requiring immediate prosecution once a prosecutor has sufficient evidence to prosecute because such a policy would pressure

1 prosecutors into resolving doubtful cases in favor of early and
2 possibly unwarranted prosecution.  Therefore, even in circumstances
3 where a prosecutor has sufficient evidence gathered to prove his
4 case beyond a reasonable doubt, delay still might be justifiable.
5 See Id. .  See Id. at 793.

6     In cases where there is no permissible justification for the
7 government delay government a court must inquire into whether the
8 delay resulted from the government's negligence in seeking an
9 indictment or reckless or bad faith intentional delay by the
10 government.  If mere negligent conduct by the prosecutors is found,
11 then the delay and/or prejudice suffered by the defendant will have
12 to be greater than in a case where the delay results from the
13 government's bad faith or reckless conduct.  See Moran at 781.

## DISCUSSION

15     In Defendant's moving papers, he argues that he has been
16 prejudiced by the government's delay in indicting him because he
17 can no longer locate the IRS official with whom he negotiated the
18 RNFTL.  Defendant argues that this official's testimony is critical
19 to his defense because the IRS official would testify that he
20 issued Defendant a genuine RNFTL, thereby negating the intent to
21 defraud element of the offenses.  Defendant identifies a number of
22 reasons that he is unable to locate this official: (1) 75 months
23 have passed and he is unable to remember the IRS official's name,
24 (2) the RNFTL is not legible and therefore the official's identity
25 cannot be ascertained, (3) OCTC notes taken by the escrow officer,
26 which might have contained the identity of the IRS official are now
27 missing, and (4) telephone records, which might have allowed

6

defendant to locate the IRS official by tracing back the numbers that he claims to have called to get the RNFTL, do not exist.

The government responds that Defendant's assertion that the IRS official would exculpate Defendant is speculative. In order for Defendant to show actual prejudice, the government argues that he needs to make some non-speculative showing that the IRS official would actually testify that the RNFTL was valid and that he processed the release. The government states that Defendant cannot do this because he does not know who the IRS agent is, much less have any evidence about the content of his testimony. The government also states that Defendant's inability to remember the IRS agent's name is not the result of government delay. The government points to the fact that Defendant could not remember the IRS official's name when the IRS interviewed him as part of its criminal investigation just a few months after the RNFTL was recorded.

Defendant cannot establish actual prejudice for three reasons. First, as discussed above, Defendant must present some independent supporting evidence as to what the unavailable witness, the IRS official, would testify to. The only information about the purported substance of the IRS official's testimony comes from Defendant himself. Courts have found that this is insufficient. For example, in United States v. Mays, three witnesses, which the defendant claimed were critical to their defense died between the time that the crime occurred and Indictment. The court held that the defendants could not prove that the deceased witnesses' unavailability actually prejudiced the defendants because there was no evidence other than the defendants' self-serving declarations

7

which would allow the court to accurately evaluate the content of the witness' testimony. Mays, 549 F.2d at 680. The court also noted that the lack of supporting evidence of the content of the witnesses' testimony weighed heavily against the defendants because the witnesses were alive when the investigation began and defendants' became aware of the possibility of criminal indictments, yet the defendants' did nothing to preserve their testimony or provide their identity to law enforcement. Id. at 679. In this case, the only information in this case about the substance of the IRS official's testimony comes from Defendant's claims and accordingly, is insufficient to establish actual prejudice. Additionally, Defendant knew that he was under criminal investigation as early November 2001 because the IRS interviewed him and read him his rights. Defendant could have attempted to ascertain the identity of the IRS official at that time and provided the information to IRS investigators and preserved him as a witness for trial.

Secondly, in as much as there are no IRS records to establish Defendant's thesis, Defendant cannot prove actual prejudice because even if the IRS official that Defendant claims to have dealt with could be located it is improbable that the official would be able to recall the event and be able to provide exculpatory testimony. An IRS official charged with processing lien releases likely processes a great number of liens a year. It is improbable that the IRS official would be able to testify that he issued Defendant a valid RNFTL.

Finally, even if Defendant could establish that there was an IRS official whose testimony would exonerate him, he still must

8

prove that the reason the witness is unavailable to testify is because of the government's delay.  This requires Defendant to demonstrate that but for the government's delay in indicting him he would be able to locate the IRS official.  Defendant presents no evidence that supports such a finding.  As discussed above, Defendant identifies four reasons for his inability to locate the witness: (1) 75 months have passed and he is unable to remember the IRS agent's name, (2) the RNFTL is not legible and therefore the agent's identity cannot be ascertained, (3) OCTC notes taken by the escrow officer, which might have contained the identity of the IRS agent are now missing, and (4) telephone records, which might have allowed defendant to locate the IRS agent by tracing back the numbers that he claims to have called to get the RNFTL, do not exist.  In regard to Defendant's first claim, that the 75 month delay is the reason for his inability to recall the IRS official's name, the claim is untenable as Defendant could not remember the IRS officials name in November 2001–eleven months after the alleged criminal act took place- when he was interviewed by IRS agents.  The defense does not claim any impermissible delay until after the investigation ended in March 2002.  Even if the Court found delay after March 2002 impermissible, Defendant could not show that he was prejudiced by it because based on Defendant's own admissions he was unable to recall the official's name well before that date.  Secondly, in regard to the illegibility of the RNFTL, there is no evidence that the signature on the RNFTL is any less legible because of government delay or that had there not been delay that the official's identity would be ascertainable.  Third, in regard to the missing notes from the OCTC files, Defendant submits no

9

evidence in the form of a declaration from Ulrici or other title company official that states that the company possessed the identity of the IRS official who was involved in the lien transaction.  Finally, Defendant has made no showing that but for the delay after May 2002, that the phone records would have shown the numbers at the IRS that Defendant contacted for the lien release.  To the contrary, Defendant's attorney states that many of these records are only kept for 90 days and in some cases not maintained at all.

Because Defendant cannot satisfy his burden to establish actual prejudice, the Court need not assess the reasons for the delay.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss for pre-indictment delay is DENIED.

IT IS SO ORDERED

June 11, 2007                    _____

                                 D. Lowell Jensen
                                 United States District Judge